The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Welcome everyone. I want to welcome to the bench. I'll put bench in quote marks Our newest judge, Judge Montecalvo. We're very pleased to have you with us. Thank you. Very pleased to be here. Today's cases will be called as previously announced and the times will be as allotted to counsel. The case today is United States v. Jeffrey Davila-Reyes, appeal number 16-2089 and United States v. Jose Reyes Valdivia, appeal number 16-2143. Attorney Sanchez Macera, please introduce yourself for the record and proceed with your argument. Morning, Raymond Sanchez Macera on behalf of Jeffrey Davila-Reyes. This case presents an issue of importance and first impression to the Court of Appeals. The constitutionality of the statute that confers extraterritorial application on MDLEA, foreign citizen to a foreign vessel on the high seas. The now withdrawn panel opinion by Judge Lippes, Thompson, and Howard concur was specific and showed that the Court took pains and time to analyze every point presented before declaring unconstitutional D1C. The panel followed history and the Court's precedent. All arguments raised by both parties were carefully analyzed to the point that all the parties are now in our supplemental brief. I'll brief in few new arguments to our supplemental brief. To finish my introduction, I respectfully believe that the withdrawn opinion declaring unconstitutional section D1C of the MDLEA grants even more power to the government to determine whether a vessel is stateless and prosecute cases on the MDLEA. As the panel established a process by which the investigative officer, Coast Guard officer, that received mixed signals regarding the assertion of a bare assertion of claimant nationality can still determine the vessel is stateless but respecting international law. Counsel, I'd like to ask you a question about what you have referred to as the statutory equivalent argument or maybe we should call the mismatch. This goes to the issue of whether the captain, having made a claim of nationality, whether you can now argue as you do on appeal that given the language of the statute which refers to a claim of registry that the statute does not apply. My question is I don't see how you can now make that argument. When the plea was entered you were acknowledging that the statute by its terms applied to the conduct that the government alleged and now you're trying to basically take that back. You say well no, on second thought the statute by its terms does not apply to what we have admitted to. What principle that applies to the finality of clear agreements? What principle allows you to do that to now basically change your mind? I'm not aware of any principle that allows you to do that. No your honor, we and I briefed the issue as basically stating that it was an important issue that is recurring in our district, the district of Puerto Rico, and that this court should not waive the argument but come decide it head on. The issue of the mismatch is an important issue that it goes directly and respectfully to the jurisdiction of the court and I believe the court can decide the issue even if we didn't brief it initially. Now when you say it goes to the jurisdiction of the court, what exactly do you mean? That's a pretty slippery phrase. What do you mean it goes to the jurisdiction of the court? Yes sir, here the government proceeded on the theory of D1C that the defendant made a claim of registry that it was not affirmatively and unequivocally asserted by the vessel by the nation by declaration. So what we're saying to the court is this issue goes directly and to the heart of the issue that the court will be deciding in this case and to whether that issue is constitutional or not, that section of the law is constitutional or not. Counsel, your co-counsel, counsel for co-defendant suggests that this is a subject matter jurisdiction issue. Is that what you're articulating here? Yes, your honor, and the issue that's what that's exactly what we are arguing, your honor, that it's a subject matter. If that is so, how do you square that with Gonzalo's precedent, which says that these statelessness provisions have nothing to do nothing to do with subject matter jurisdiction. In fact, your co-counsel says, I believe, I think it's right in the brief that if you cannot undo that Gonzalo's precedent, if we are not prepared as an ombud court to reverse it, basically your statutory mismatch argument is a no-go. You can't make it. Do you, and I know you adopt the arguments of co-counsel, do you agree with that position? Your honor, I do agree and I act upon it, but because I was the attorney that argued before this court, Gonzalez. In Gonzalez, your honor, the issue was that after we pled guilty, we then argued before this court that he was, the vessel was not. Five minutes remaining. The vessel was not stateless, so the court then proceeded to say, well listen, this is an issue that it doesn't affect the courts and you're attacking the court's jurisdiction. The court's MDLEA, the court's jurisdiction comes from another statute. And in this case, the difference with Gonzalez and in this case, your honor, is that in this case we are attacking the prescriptive jurisdiction, which is different than in the Gonzalez case. Now, contrary to my colleague, I don't think that the Gonzalez issue will prevent or goes into any matter before this court. It doesn't apply as here. In Gonzalez, the defendant didn't even make a claim. We didn't even make a claim in the district court. That because we alleged that the officer, the Coast Guard, didn't even ask them because they were being rescued. So no claim of nationality or race was made. And therefore, your honor, the Gonzalez issue doesn't prevent this court or it doesn't prevent this court from deciding our issue because we are alleging something totally different. And in this case, the parties did make a claim of nationality for the vessel, Costa Rican nationality, contrary to also Gonzalez. May I ask you, my understanding, my understanding is that it's at least possible to prove statelessness of a vessel in the face of a claim of nationality without resorting to the presumption D-1C, correct? Yes, that's correct, your honor. Okay, so that being so, one of the things you're challenging is the indictment, correct? Correct. Now, the indictment doesn't reference D-1C, is that right? That's right. So under our normal approach to a challenge to an indictment, it would seem possible that the indictment as written would permit proof of statelessness on a ground other than D-1C, correct? No, your honor, and if I may explain, because we are adding, we cannot look only as to the indictment. No, I understand, I just separate it. Just with respect to the indictment itself, if that's what you're trying to attack, I think we have to look at only the indictment for purposes of determining whether the indictment should be dismissed. Your honor, as the purpose of the indictment alone, the indictment here may reference to C-1A. Correct. But as our argument goes to the issue as how can you determine C-1A without looking at the other documents? Yes, but in the indictment, the indictment doesn't reference those documents. So just as the indictment, it's just agnostic as to how it's going to prove D-1A, and you just admitted that one way you could prove it is through a means of D-1C. So doesn't that mean the challenge to the indictment must fail? No, your honor, because maybe I didn't understand the question, but the issue here is that even if the indictment only alleges C-1A only, the court will still need to look at D-1C. That's partly because of the plea, right? Yes, sir. Okay, so now let's say if we shift our focus from the challenge being to the indictment to the challenge being to the plea, which I understand you also to be challenging, though the remedy might be different. We might unwind the conviction without necessarily requiring a new indictment. But if we now look at the challenge to the plea, did you make an argument to the court that the plea was unlawful because the plea implicated D-1C? To the district court, no, your honor. No, right. So that suggests to me that with respect to your challenge to the plea, we have to apply plain error because that challenge was not made below. And we argue, yes, your honor, and we argue, Titor, for that proposition that this is an important issue. It's the impression that the court... Okay, so let me just then ask that on the first plain error in which you need to show a clear or obvious error, how is it... This isn't meant to be a rhetorical question. How, in your view, is it clear or obvious given what the plea says that the plea is based on D-1C rather than some other means of proving statelessness? Because I don't see a reference to D-1C in the plea itself. No, your honor, but but there is allegations here that the government called and requested confirmation from the government... That's time. You can answer. Yes, sir. Here it says it's evident that the government did contact the government of Costa Rica for confirmation of the registry claim that the defendants are being put aware that they were pleading guilty to the issue of D-1C because the government indicated, listen, I have evidence here that you claim nationality or you claim registry and it wasn't backed up by the nation. So squarely, we were just then and the defendant understood that he was pleading guilty to D-1C and that's why we urged the court not to look only at the indictment but all documents that accompany that final determination of a plea of guilty from a defendant because after we received the indictment, then we started the process of discovery and in discovery we were provided with the certification of the Department of State. We were and everything in this case pointed that the vessel was determined to be on the D-1C and that's what the defendant understood. Any further questions from my colleagues? Yes, counsel, let me ask you. In this particular case, I know your client pled guilty pursuant to the plea agreement. This was not a conditional plea, correct? That's correct, your honor. And you're asking us to look at all the documents but again, I look at the language of the statement of facts and the plea agreement and I also looked at the pre-sentence report which has a lot of other facts, very similar facts and some additional facts containing the requirements of the statute and that was not objected to. So my question is, does that in any way affect how you can be arguing this right now? Because again, you don't reserve the right to challenge the statute on appeal or the application of the statute and then in the pre-sentence report, you don't raise those objections. So aren't you doubly waiving these arguments? Your honor, the question, thank you for asking, is that Judge Lippes and Judge Thompson also tackled with that same argument that we were discussing in our brief. They asked us, listen, why is it an unconditional guilty plea preventing me from deciding this case and having you waive the issue? And it's because we resorted to class versus the United States, a recent Supreme Court decision that allows because we are attacking, Judge, not prescriptive jurisdiction of Congress powers under the Define and Punish Clause and that is constitutional as to the power then to the arrest and convict the defendants. So basically, contrary to Gonzalez, which was Judge Lippes' question, in Gonzalez we were not arguing the constitutionality of the statute. We were just saying that the court didn't have jurisdiction and it was easily disposed of by saying, listen, we have jurisdiction, the courts have jurisdiction. But because our jurisdiction is different from another statute. So that's why we're asking the court to look at the fact that we didn't waive the issue because we're challenging something different. Thank you. Let me ask also, when you pled guilty, had your client gone to trial, again, the United States had evidence providing discovery, could have obtained further evidence to prove the case beyond a real doubt whether it did or not, that's another story, but is the remedy you're requesting, is it a new trial or automatically dismiss everything and your clients are gone? Yes, the second one. We asked the court to follow that decision, the opinion of Judge Lippes, and that's my position. If the court follows that original opinion, that will give more power to the federal government to determine whether a vessel is stateless or not, because they're adding to that determination of statelessness, the issue of what they call mixed signals. And so if they find this vessel 100 miles from here, and they find contrary evidence as to that vessel was going, or contrary evidence as to the nationality, if you say you're from North Korea, anyway, why are you so far from here? So they place, even though they declared the statute unconstitutional, the judges did place an alternative to the government to prove this case following international law. Counselor, maybe your counsel for co-defendant can respond to this, but I want to put the question out there. I'm looking at the actual language. It's called government's version of the facts that is attached to the plea agreement. It says at the end of the second paragraph, the master claimed Costa Rican nationality for the vessel, but provided no registration paperwork, and there was no indicia of nationality on the vessel. The government of Costa Rica was approached and responded that it could neither confirm nor refute the registry of the suspect vessel. The vessel was determined to be one without nationality. What did your client understand those admissions to reflect in terms of the provisions of the statute defining what is a vessel without nationality? What did you understand those admissions to be a reference to? Yes, sir. Then I will have to look to 70502E, where there is a claim of nationality because it can be made in three different ways. So if the coast guard didn't find any documents in the vessel, and if the vessel wasn't flying the nation's flag, but he did make a verbal claim of nationality, so despite the fact that the vessel doesn't have any documents, still the investigating officers to ask the master of the vessel, which was identified here, to make a claim of registry or nationality. So we proceeded under that theory that still under E, a claim of nationality, a valid claim of nationality was made, but then we fall into the I'm sorry, the D1C, which says that, well, listen, the nation didn't support your claim, it's a stateless vessel. What happened, suppose the persons on the boat withdraw the claim of nationality and in fact admit that the vessel has no nationality, and it's not flying a flag, and there's no indicia of nationality, and a check with one country that might be it, turns up no evidence of it. Is that enough to establish that the vehicle, the vessel is subject to jurisdiction of the U.S. under the statutory language? Yes, if the court follows, again, the judges Lipez and Thompson opinion, under, they established something very powerful to the government, which is the mixed signals test that they presented to us, and under that scenario that you're presenting to me, it will fall squarely on the issue that they were hiding their nationality, you are not providing me a nationality, and even if that, we'll fall into D1A, which says that the vessel, sorry, D1AB, which says that they failed to make a nationality or a straight claim. But what if we read the plea agreement as an admission by the defender that the vessel had no nationality? Isn't that, wouldn't that be enough, then, to establish the factual basis for the assertion of U.S. jurisdiction? But if I'm not mistaken, Judge, the statement of fact does mention that the Costa Rican government was called and then denied a claim. So, even if the... Sure, well, that hardly adds anything, if the defendant is admitting that the vessel has no nationality, it's hardly inconsistent with that, that a call to Costa Rica produces no new information other that they can't admit or deny. The statute by itself, respectfully, is our position, that the statute dictates and mandates that every investigating officer asks for a claim of nationality, because if the officer, at a distance, sees a vessel that is not flying a flight, at a distance, I can't see no markings, then I exercise my right to approach. I go and see there, and I ask him for papers. You don't have any papers, again, but the statute requires that, not having papers is not enough, the statute requires that officer to ask the matter of the vessel to make a claim of nationality for the vessel. Any further questions? Yeah, just one quick question. Counsel, you mentioned when you were arguing that if the panel opinion is vacated, then the United States becomes more powerful in prosecuting these cases. Isn't the flip side also true? If the statute, you know, it can, the United States cannot prosecute under statute, you're making, not you, but the United States would be, in a big sense, powerless to prosecute these drug cases which are a matter of national security. Yeah, what we are saying is that, true, we are arguing that D1C is unconstitutional, but again, if the court, again, respectfully, if the court follows, Judge Lieberthal also put a very intelligent provision there that says, I still, if you make a bogus claim of nationality, they wanted to protect international law, so, but again, if you make a bogus nationality claim, it's still without opinion, and I'm providing the government tools to seize the vessel, continue investigating, and eventually declare the vessel stateless. I mean, it's not an issue that you make a claim, I'm going to let you go, which is something that, it's not that what the opinion wanted to convey. Thank you. Thank you, counsel. At this time, please mute your audio and video, and attorney Perez, please unmute your audio and video, and introduce yourself on the record to begin. Good morning, your honors. This is attorney Franco Perez. I am appearing for the appellant, Jose Reyes Valdivia. May I please reserve three minutes for rebuttal? That's fine, Mr. Perez. If you could speak up a little bit, I think that would be helpful. Oh, I apologize. That's much better. Thank you, your honor. So, while I had other opening remarks prepared, I think, perhaps the most prudent thing is to jump right into Judge Barron's question about the indictment, and the lack of an attack on the indictment, and I think that your honor's question is best answered by looking at what an indictment must provide. It is simply a plain, concise, indefinite statement of the essential facts constituting the offense, but a preliminary issue of jurisdiction is separately addressed under this court's case law and under the NDLEA, under section 704. I just don't want you to go too far down this road, because I want to make sure you understand my question. My question wasn't that there had not been a challenge to the indictment. It was that the challenge is to the indictment, but that I don't see how the indictment says anything that triggers the challenge that's being made, because it doesn't refer to D1C. So, given our general jurisprudence that we allow factual development post-indictment, we're loathe to say an indictment has a problem unless on its face it shows it has a problem, and since the indictment here just says C1A, and as your counsel, co-counsel conceded, you could prove statelessness through roots other than D1C in a case like this, and there was nothing at the time of the indictment to indicate how statelessness would be proven. I don't see how the indictment is defective, even if the plea might be. So, I think one answer to your honor's question would be that the government, in the facts that it developed thereafter, if you look at docket entry... Again, that's not a challenge to the indictment itself. That's a challenge to some other thing, which could be the plea, and then we move on to the question of the plea, which I understood your co-counsel to say we would have to review that challenge for plain error. I still think that under the operative facts of the case, if you look at the notice our clients received in this case, it was a very general assertion of jurisdiction, but thereafter the the only facts that had developed had to do with those accepted by the parties in the plea agreement. Well, up until the time of the plea, the plea terminated whatever other factual development might have occurred. So, I think the question then becomes in challenging the plea, do you agree as well as your co-counsel that the challenge to whether the plea implicated the presumption was not itself made to the district court? That was raised for the first time on appeal. I'm sorry, could you repeat the question, your honor? There was a motion to dismiss the indictment before the district court. I didn't see any challenge to the plea. Obviously, there wouldn't have been. There was a plea to the district court. So, as your co-counsel put it, that means that in reviewing the challenge to the plea, we review for plain error, correct? I think under some circumstances you would review under plain error. Here, I know because it's jurisdictional, is that the idea? Right. Okay, but so I understand that argument. It just, but if we if we thought Gonzalez was correct, so it was not a question of subject matter jurisdiction, then we would review just for plain error. I think under those circumstances, then the answer might have to be yes. Okay, well, just since we're on this line of questioning, what is your answer to how it is clear or obvious that the plea, which does not itself make any reference to D1C, is based on D1C? I mean, the plea by itself may not make reference to D1C, but I think it does not. But with the complaint affidavit, when we look at those facts, it seems to point us in that direction. So, I think that the plea itself, all it does is provide a clear, concise statement of what the charges are, but then the jurisdictional issue itself has to be decided later on. Counsel, I referred your, I referred counsel for the co-defendant to the language in the plea agreement. It's identical for both of you. Do you have the government's version of the facts in front of you? Yes, I do, Your Honor. Okay. So, again, there is this recitation of facts. The master claimed Costa Rica nationality for the vessel, but provided no registration paperwork, and there was no addition of nationality on the vessel. The government of Costa Rica was approached and responded that it could neither confirm or refute the registry of the suspect vessel. The vessel was determined to be one without nationality. I guess this is a leading question, counsel. I don't think you need a leading question, but it would seem to me that that language, that recitation of facts, seemed to be an unmistakable reference to D1C. It doesn't cite D1C, but in terms of your understanding of what you were admitting to, to establish that this was a vessel without nationality, what else could that be a reference to other than D1C? Right, I completely agree with Your Honor's assertion, and again, that the government was well within its rights to it. This is a government-drafted document. It is a unilateral contract. The government could have included other facts in the document if it thought that it could prove those at trial. Instead, it opted simply to include a D1C theory of jurisdiction, and that's what's concerning. This is not unusual, right? I mean, you have an indictment that is very general, simply asserts a broad jurisdictional proposition, and then over the course of the case, as you move towards trial and you begin to enter into plea discussions, the theory of the government gets narrowed, and that's the phenomenon that we see here. You finally get to the point where there's going to be a plea agreement, and the court has to satisfy itself if there is a factual basis for the plea. I mean, that's a before it's accepting the plea. So, you get to that point, and you get the kind of specification that you have in this recitation of the fact. I mean, that's commonplace in the course of a criminal case as it moves from an indictment to agreement or to trial. Is that not correct? Yes, Your Honor, and I think that goes to my reference. Five minutes remaining. Five minutes. To my earlier reference at the beginning of my argument about how the purpose that the indictment serves is very limited. It's just to sketch out and provide notice of the essential facts, but here this is a jurisdictional statement, and once those facts were developed and adopted by the parties, we see that the government opted for a D1C theory of statelessness. Does that track D1C, what Judge Lopez just read, if we don't read nationality and registry to be the same? Because it doesn't refer, D1C refers to a claim of registry, does it not? Yes, Your Honor. And what Judge Lopez just read to you was a claim of nationality. Correct, Your Honor, and I think that there may be some confusion. If we look at the document, the State Department certification, for instance, the government of the United States, when it contacted Costa Rica, it asked about vessel nationality and registry. So we see that there is some kind of mismatch or maybe the terms there are being used interchangeably, and so I think that would account for that phenomenon, that it doesn't, that it only mentions a claim of nationality. Do you maintain that we should read the terms as interchangeable, one meaning, you know, they're just exactly the same? I think that's one method of analysis that the Court could adopt here, and we briefed it because we were ordered to do so, but I do think that... But what is your opinion? My opinion is that the Court should reach the broader issue, even though it is constitutional in nature, and it has potentially... But what is your opinion about the interchangeability? Well, my opinion about the interchangeability is that the informal usage, they are not one the same, they are different terms. However, there are various sources of authority, or maybe perhaps an informal usage. We see a lot of conflation of the two terms, and I think that that's one thing that we see in the language of the government's version of facts in the plea agreement. Was it your understanding at the time you entered the plea agreement, and was it the government's understanding that the terms were interchangeable? Yes, yes, Your Honor. That was our understanding at the time. Do we have anything to indicate whether it was the District Court's understanding? It would appear so, yes, Your Honor. Otherwise, yeah. I think up until the Court issued the order for supplemental briefing, I think everyone operated under the assumption that the claims were synonymous, that a claim of nationality is the same as a claim of registry. And to my knowledge, that's the first time that the issue has been raised. So it is a novel issue, so there's no reason to think that the Court and the parties below were operating under that understanding as well, that the claims are interchangeable. Counsel, let me ask you, again, in this case, as I mentioned earlier, there's no conditional plea. And then your client reaches a plea agreement with the United States. From the United States' perspective, if we were in bond to rule in your client's favor, isn't the government being shortchanged? Because what normally happens, if there is an issue with the statute, and I've seen this over the years, it happens. Sometimes the government charges under the wrong statute or a statute that is dubious, but you open the U.S. Code, there may be other statutes which your client can be prosecuted. Didn't that not provide the government an opportunity, raising these issues now on appeal, after a non-conditional plea, of not allowing the government to supersede the indictment and perhaps charge with another statute? And part B of the question is, if we rule in your favor on appeal now, would the government be allowed to supersede the indictment and charge your client with a different statute or correct statute? Just to answer your honor's first question, it is my understanding under CLAS that even if our client entered a plea of guilty, he does not, by that unconditional guilty plea, without more, his right on appeal to bring his constitutional challenge to Section D1C of the MDLEA. Given that, then the United States should not be waiving its right to supersede should this case be ruled upon in your client's favor, correct? I don't think that's the case, your honor. If the government had other theories that it wanted to assert, it could have done that six plus years ago. There was no trial here, so it's not a double jeopardy issue. Can't the government then prosecute under a different theory? Oh, I agree that there's no trial, your honor. But as it stands... Oh, I apologize. Nobody compelled the government to make the choices that they made here. I mean, they appear to have... In the certification, the Department of State certification, in which they are required to describe the basis for jurisdiction to proceed under the MDLEA. In that document, they say, accordingly, the government of the United States determined the vessel was without nationality in accordance with, and they specify, D1C, rending the vessel subject to the jurisdiction of the United States pursuant to the general jurisdictional provision of the statute. They made a choice. Early on, they made a choice. Nothing compelled them to make that choice, but they made a choice. What's unfair about holding government to that choice? They could have asserted other basis for jurisdiction, but they didn't. If I may just briefly respond, I agree wholeheartedly with your honor, and moreover, the MDLEA provides conclusive proof of the Claim Nation's response, so there was no other way to challenge it. Any further questions? Thank you. Thank you, Your Honors. Thank you, Attorney Perez. Please go ahead and mute your audio and video at this time, and Attorney Pelleteri, at this time, you can introduce yourself on the record to begin. Thank you, Chief Judge Barron, and may it please the court, John Pelleteri on behalf of the United States. There are several grounds that this court can resolve this case that compel affirmance of the convictions in this case. Some are procedural, and they stand in waiver, and some go to the merits. I'd like to address all of them. I was planning on starting with the merits, but since many of the questions have gone to waiver and procedural grounds, I'll start there. Just as a background principle, the MDLEA makes it unlawful to traffic drugs on board a vessel without nationality, and then it provides that that term includes vessels that meet three criteria in 70502 C1, A, B, and C, and I'll just call them subsection A, B, and C for ease of reference. When the government proceeds against a drug trafficking on board a vessel without nationality, it can proceed under one of those specific definitions, or it can proceed under the general definition of a vessel without nationality, which in this court, Modus Luci, made clear includes at a minimum a vessel that is stateless under international law, and those grounds are not mutually exclusive. Here, the indictment charged the defendants with trafficking drugs on board a vessel subject to the jurisdiction of the United States, and it specifically cited the definition of a vessel without nationality. Well, excuse me, let me ask, this concept of a vessel without nationality, I mean, some of the discussion suggests that it's like a sort of a platonic ideal, it's just out there, it sort of exists, but it's not grounded in any facts. That's simply not the case, right? The concept of a vessel without nationality, whether it is defined broadly in international law, or whether it's defined in the ways it is in the MDLAA, inescapably, it's grounded in fact, right? There has to be some factual basis for deeming a vessel without nationality. Would you agree with that? Yes, that's true, your honor. Okay. No, please go ahead. I didn't mean to interrupt. Please go ahead. I mean, so going to the merits, I mean, our position is that there are two merits questions. One is, does the Felonies Clause incorporate international law limitations? And then if it is, even assuming it does... Mr. Peltier, before you jump to that way of framing the merits, I just want to take you back one step, which is, I thought the first merits question we would ask is whether the challenge to the indictment can succeed when the indictment only cites CA, or I think, and doesn't cite D1C, since the challenge is to D1C. What's your answer to that? Why, in your view, just not talking about the plea, just the indictment itself? Yes, I mean, so their challenge to their convictions are that the indictment had to be dismissed because the statute that they're saying is, that their convictions are premised on is unconstitutional. Correct, but under the indictment, does the indictment reference that provision? No, absolutely not. And what is the government's view of the significance of the fact that the indictment does not reference that provision? The indictment encompasses the allegation that the vessel in this case was a vessel without nationality under what we call the general definition of a vessel without nationality, which means a vessel that is stateless under international law, and any of the subsections A, B, and C. Now, later in the plea agreement, certain facts were... Okay, so before we get to later, just the government's view then of why, given what you just described about the indictment, why does the challenge to the indictment, is allegations, facts that are totally separate and in addition to the allegation that the vessel in this case only fell within subsection C? Okay, if that's right, we then get to the plea agreement, which the argument you just made would not work as a defense to. It would, your honor. No, the argument you just made would not work as a defense to because the plea agreement arguably has different representations in it than the indictment does. It has... Say more about how to construe the plea agreement for that argument to work. Yes, it has additional... Getting to that, with respect to the challenge to the plea agreement, I understand if it's not a jurisdictional point that implicates our subject matter under Article 3, and Gonzalez is still good law. We're reviewing for plain error whether the challenge to the plea agreement can work, and that would mean it would have to be clear or obvious under the plea agreement that the plea is based on D1C. If the plea agreement stated that it was based on D1C, would you concede then that they would be able to challenge the plea on the argument that they're making? If the plea agreement established that the government was proceeding under D1C and under no other definition of a vessel without nationality, and they were challenging the constitutionality of D1C, which they are, then class would permit that to move forward. Okay, so the whole case then turns on, at least on this point, whether in effect it's clear that the plea all the background understandings, given the incorporation of the government's facts, etc. So what is your answer to why, given the whole context here, we shouldn't read the plea agreement as if it does reference D1C, and so the challenge can proceed under class? Well, first of all... D1C only? Excuse me, your honor? I understand. Was that D1C only, Judge Barron? Uh, I think it's a little, it's legally complex whether the challenge could proceed if it was partially, but let's say, is it, if, what is the government's argument as to why we should read the agreement so as not to clearly or obviously implicate D1C? From the beginning of the indictment, through the plea agreement, through the plea colloquy, the government has always maintained that the vessel, in this case, is a vessel without nationality by invoking the larger definition of a vessel without nationality and the specific criteria in subsection C. Counsel, that's not, excuse me, that's not true in the certification. How do you, how do you defend that statement in light of the certification? The certification, which I quoted earlier, unmistakably references D1C when it explains the basis for jurisdiction, does it not? Well, your honor, what A, B, and C do are provide criteria that streamline enforcement proceedings under the MDLEA, and if the government can establish that a vessel meets those criteria and it does throw, it does that through a certification, it can proceed under A, B, or C, but it's not foreclosed from also proceeding under the general definition of a vessel without nationality. What's the point of the certification? Why the specification in the certification, which again unmistakably references D1C, nothing else? To permit the government to proceed under that streamlined procedure, which the reason that Congress enacted A, B, and C in the legislative history establishes that what Congress wanted to do was to avoid what on the basis that defendants were making and make clear the criteria that established statelessness, and it's established that the State Department certification is conclusive as to a government's response under A and C. Now, when Congress added A, B, and C, it didn't say, well, then the government is foreclosed from going under the general definition of a vessel without nationality while establishing generally that's a stateless vessel. It's just an option that the government can proceed under to streamline enforcement proceedings, and that's what the government did here. It had the certification. The certification is only relevant to the response under A and C. That's what the statute provides, that a State Department certification is conclusive as to a government's response under subsection A and C, but that doesn't mean that... Why shouldn't we view the plea agreement here, given the certification, as the government having opted to go to establish jurisdiction under D1C only? Your Honor, because I think the government... First of all, when someone pleads guilty, they admit to all of the facts that support the conviction under the indictment and under the facts admitted in the plea agreement and the plea colloquy. What do you mean they plead to everything in some general sense? They plead to the specific facts in the recitation. It's not some general admission that whatever might support the charge, we admit to that. That's a preposterous suggestion. Your Honor, so what the defendant admitted through the plea agreement and the plea colloquy, and I'll quote, is that the master claimed Costa Rican nationality for the vessel, but provided no registration paperwork and there was no indicia of nationality on the vessel. Now, if we'd stopped there and there were no other facts, that's sufficient, that those facts are sufficient to establish that the vessel in this case was without nationality. That can't be true, counsel. That cannot be true. The MDLEA specifically says that just a simple claim of nationality suffices, along with the flying of a flag, the production of documents, to make a claim of nationality. The MDLEA does not say a verbal claim of nationality so long as it is accompanied by other indicia of nationality. MDLEA doesn't remotely say that. The MDLEA says that the government can proceed under AB&C if there's an oral claim of nationality and the government either denies it or doesn't respond and affirm it. But it doesn't say that the government cannot otherwise proceed under the general definition of statelessness under international law. I mean, that was the state of things before the three subsections AB&C were enacted, and that still remains the case. And under that general... If I may, is it your position that those facts, those three sentences that you were just quoting from, also establish that general definition of statelessness, or that's your position? That's exactly our position, your honor. Those facts that I just read establish that this vessel was stateless under international law. We have a claim of nationality, even though a claim of nationality was made. Correct, your honor. And even though those sentences track almost exactly D1C. That's true, your honor. Exactly. Because under international law, a state, and as we referred to the Caribbean Agreement, under international law, a state approaches a vessel and there is a claim of nationality, but there's no other indicia nationality present. The state is entitled to treat that vessel as stateless under international law. That's what the Caribbean Agreement confirms, and that is why under the general definition, this vessel here qualifies as stateless. Now, the MDLEA goes a little further under A, B, and C. It says, well, even if there has been an oral claim, in order to proceed under subsection C, under that streamlined enforcement mechanism, then the United States contacts the claimed nation and receives a response. And that's clear, actually. I just want to note that if you look at our pre-trial motion where we set forth the facts that were indicative of the fact that this was a vessel without nationality, that submission states that the Coast Guard contacted Costa Rica out of an abundance of caution. That's the language that's used. Not because it was required to under international law, out of an abundance of caution. Here, even if the Coast Guard had not contacted Costa Rica, we could have charged this case and proceeded under the general definition of a vessel without nationality. Now, the Coast Guard did contact Costa Rica, and that permits the government to proceed under this specific definition in subsection C. And that's why... I just want to make sure in this analysis, I take it you'll agree with this, but you might want to just explain how this assists your argument if it does. I take it your position is that in reviewing the question you're now asking us to consider, the standard of review for us is plain error? Yeah, and so far as what... And that would suggest that the answer to this question of whether those facts do suffice or don't suffice, it must be clear or obvious that they don't suffice in order for the defendant's argument to work. Yes, absolutely. Your Honor, viewed through this lens, this is really a challenge to the plea hearing. It's a rule 11 challenge to the plea that the admitted facts are not a sufficient basis for my guilty plea. Or I think as Judge Lopez suggested, it was... I didn't have an adequate notice that you were proceeding under this general definition, and so therefore there's some sort of either notice or due process violation. Those are reviewed for plain error. And in fact, I mean, I'm not sure that's even present in this case because in the government supplemental briefing when we indicated that... No, but I understand that, but neither of those arguments is before us. The constitutional challenge is before us, but my understanding is the constitutional challenge insofar as it's to the plea also is subject to plain error because the plea was not challenged on that ground below. And then the threshold question for that constitutional challenge is, does the plea implicate the provision on which the constitutional challenge rests? And it must be clear or obvious that it did, which just takes us back to this exact same set of questions, which is given what the facts were pled to, is it clear or obvious that those facts could not support the general definition of a vessel without nationality? Yeah, I think that's true, Your Honor. Under the plain error standard, if they're challenging the plea hearing, and we actually don't think that... It's not clear from any of their submissions that they are embracing that type of claim, a Rule 11 challenge, then it's a... Well, just so I understand, you mean they're only challenging the indictment? Well, that's the relief they're seeking, is dismissal of the indictment. Is that the only relief they've sought? As far as I'm aware, Your Honor, I don't think they've ever asked for a vacatur of their guilty plea with the idea that... With a remand for further proceeding. So, what they're doing is challenging their Rule 11 guilty plea. The actual remedy, the correct remedy, if they're... Well, yeah, but I'm just trying to understand, are they... Does the government have a view of whether that's being challenged? The case is pretty different if the challenge is only to the indictment. We read it as... Then, just under our jurisprudence, as I understand it, the only question is, what does the face of the indictment allege? And given what it alleges, could it be proved out through means other than D1C? That's a very different question of whether the plea, given all the context that pre-post dated the indictment, whether the plea could implicate D1C. So, what is the government's view? Is the only issue before us, according to the government, the indictment? You could have saved us a lot of time if you had made that clearer. Well, Your Honor, we have not seen anything in their papers that suggests they're challenging their guilty plea and seeking... As far as we can tell, they're challenging the indictment. And if then the guilty plea extinguishes their claim because the indictment clearly encompasses the general definition of a vessel without nationality and the specific definition under subsection C. I don't see how the guilty plea extinguishes it. It's just sort of beside the point to it. Well, the guilty plea is... Not under class. The guilty plea is not a waiver. So, you just look at the challenge of the indictment straight up. But then the challenge of the indictment is a challenge to whatever the indictment says. You don't have to know anything more than the face of the indictment. Hear, Your Honor, what they're saying. So, let's put aside the plea hearing and just the guilty plea. Their guilty plea extinguishes any constitutional challenges that does not eliminate the government's power to prosecute them. So, if you were to conclude that subsection C is unconstitutional, that doesn't extinguish our ability under the indictment to their guilt and ability to prosecute them because it encompasses the general definition of a vessel without nationality. So, the matter would have to be remanded and then the government, if it has evidence, to prosecute it under any other subsection or alternatively supersede the indictment. That's what it would have to decide to do, correct? If they're only challenging the indictment, then their unconditional guilty plea is a waiver. That's it. End of story. Affirm convictions because, as I said... That depends on the indictment not implicating D1C. That depends on the indictment encompassing both D1C and... Yes, yes. But in our view, it's clear that the indictment... It's clear that the indictment does, so that's the end of the story. Yes, so they're affirmed. Any further questions? Yes, I have one question and it goes to the merits on the constitutional issue. I have reviewed your, I think it's your reply, supplemental bond brief, but you mentioned something because I'm looking at the felonies clause and if you read a plain reading of the nations. Now, if we go to plain error statute, I believe what the opinion that has been reviewed now and I see no authority on point except statements perhaps of some of the founding fathers or some of the early justices or treatises, but there's nothing on point that would say that there's definitely a plain error. Am I correct authority-wise? Am I correct? Yes, if this court were reviewing that claim for plain error, then clearly there would be no clear or obvious basis to conclude that the felonies clause is constrained by international law. But just to be clear, I think that you only reach that issue if you get past the indictment and the plea hearing and if you do reach that, I don't think that plain error would apply. We just don't think you reach that at all because number one, they're only challenging the indictment and the indictment encompasses subsection C and the general definition of a five minutes. Even if you get past the indictment and go to the plea hearing, the plea hearing plainly encompasses both definitions. So, it's out there, there's waiver. But if for some reason that you get, you conclude that they get past that, there would not be a plain error standard to apply there, your honor. But, Judge Lynch, did you have a question? No, thank you. I see that we haven't gotten much into the merits, but I'm happy to answer questions on the merits. We think this case is appropriate resolved through waiver. Unless any court has any additional questions. Yeah, I have one question. On this issue, just so I understand it going forward, and it's obviously relevant potentially to the outcome of the case. On this question of whether nationality and registry are the same, I'm having trouble understanding what the government's position is on that question. A footnote, I think, suggesting that you're treating them as if they're not the same going forward, or at least you're avoiding relying on the idea that they're the different. And what's the practical consequence of the resolution of that question? I haven't been able to really grasp the government's view of that. Our position is that as used in the MDLEA, the MDLEA follows common practice of equating registry and nationality. In that respect, we agree with the analysis by the panel. And if that's right, just so I understand it, if it's a small boat that there's no reason to think would be registered, what would be the sense of Congress providing that you could conclusively presume it's stateless when the unexpectedly unregistered small boat turns out not to have been registered by the country that it's called? That just seems odd. I think it has to be understood against the background expectation that on the high seas, ocean-going vessels are expected to be registered. Including small ones? So if you look at the Murdoch article that we cite in our brief, Your Honor, it explains that Britain, for example, has a small category of vessels that don't need to be registered. But they're the type of vessels that are expected to stay close to the shore. So that would make sense if Congress didn't have a conclusive presumption. But your position is that even though there are boats that are capable of being out on the high seas that are too small to be registered, it makes sense to conclusively presume such a boat is stateless because it turns out when you call up the country, it's not registered. That just doesn't make any sense to me. What the article says is that boats that for whatever reason of that sort that are not required to be registered, if they actually end up going out and sailing in the high seas, they run the risk of being treated as stateless. And in fact, Britain makes an effort to give notice to all these small boats that that's a danger, that they need to be careful about that. So that's why it's consistent with international law to treat these as interchangeable. But we also think that even if you credit the idea that registry has a narrower meaning here, that just as a factual matter, when you're on the high seas and a master of the vessel says, this boat is of Costa Rican nationality, that's enough to infer that that vessel is making a claim of registry because of what I've just talked about, the larger expectations on the high seas. And we cite the Third Circuit case with evidence to permit that inference. So either they're used interchangeably, but even if they're not used interchangeably, a claim of nationality as a factual matter permits the inference of a claim of registry. Thank you. Any further questions? Just one follow up, if I might, Chief Judge Barron. You agree that the record in this case shows that the Costa Rican government was asked both about nationality and registry? That's what the certification states, yes, Your Honor. Why would that be so if they don't have any different meanings in common usage? I think it's often the case that these terms are used either separately or together to generally make, to suggest a connection between, a legal connection between a vessel and the state. That's time. And so I think it's consistent to use them either in conjunction together or separately in common usage in international law. But I just do, if I may, make the point that this issue is not in, it's eliminated from this case. We're open to your position on that. Thank you. Thank you, Your Honor. Thank you. At this time, Mr. Palatari, can please mute his audio and video. And Attorney Perez, you can unmute your audio and video and reintroduce yourself on the record for a three minute rebuttal. Good morning, Your Honors. Mr. Perez, before you start, I just want to make sure in your three minutes, you answer the question of whether you have ever challenged anything other than the indictment in any of your papers. Well, excuse me. I do think that what we're challenging falls somewhere in between because the... Well, I guess that may be, I just want, you can also do it with a follow-up to us if you'd like, just with pointing to the point in the record where you think you've challenged something other than the indictment. But can you point us, can you identify now, can you identify now for us that suggest you challenging something other than the indictment itself? Did you request relief short of dismissal of the indictment? I cannot point to the record right now, if I may. Let me ask you, did you ever file any motion at any point saying we're challenging after the plea, we're challenging the plea or want to vacate the plea? That did not happen, correct? No, we did not do so, Your Honor, because again, what we were challenging was the constitutionality and Congress's power to enact Section D1C. I would be happy to entertain any other questions that the Court may have. Otherwise, I would ask... Oh, excuse me. I would just ask the Court to rule that Congress exceeded its Article 1 powers when it enacted Section D1C of the NDLEA. Thank you. That concludes argument in this case. This session of the Honorable United States Court of Appeals is now recessed until the next session of the Court. God save the United States of America and this Honorable Court. Counsel, you may disconnect from the meeting.